# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Everett Frazier,**
**Commissioner of the West Virginia Division of Motor Vehicles,**
**Respondent Below, Petitioner**

**vs.)  No. 20-0091** (Raleigh County 19-AA-3-P)

**Justin Levin,**
**Petitioner Below, Respondent**

**FILED**
**January 20, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles, by counsel Elaine L. Skorich, appeals the order of the Circuit Court of Raleigh County, entered on January 17, 2020, reversing the order of the Office of Administrative Hearings and restoring the driving privileges of respondent Justin Levin. Respondent appears by counsel David Pence.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for entry of an order consistent with this decision.

On September 25, 2012, respondent was stopped by investigating officer D.S. Snuffer ("Officer Snuffer") of the Beckley Police Department after the black 1996 Toyota Avalon that respondent was driving was observed to be straddling the center line and weaving as it traveled on North Eisenhower Drive in Beckley, Raleigh County, West Virginia. After the stop, Officer Snuffer noted that respondent had bloodshot, glassy eyes and slurred speech. Respondent was unsteady while exiting the vehicle, while walking to the roadside, and while standing. Respondent stated that he had been smoking marijuana, and Officer Snuffer found a marijuana pipe in respondent's front left pocket.

Officer Snuffer administered four standard field sobriety tests to respondent. After Officer Snuffer explained the horizontal gaze nystagmus test ("HGN"), he conducted a medical assessment of respondent's eyes which indicated equal pupils, no resting nystagmus, and equal tracking, thus, making him a candidate for the HGN test. During the HGN test, respondent exhibited impairment clues such as eyes that lacked smooth pursuit, exhibited distinct and sustained nystagmus at

1

maximum deviation, and showed an onset of nystagmus prior to the onset of a 45-degree angle. The investigating officer also administered the vertical gaze nystagmus test ("VGN") and respondent exhibited vertical nystagmus. During the walk-and-turn test, respondent could not keep his balance during the instruction stage. Further, he stepped off of the line during the test, made an improper turn, missed heel-to-toe walking, and took an incorrect number of steps. During the one-leg stand test, respondent swayed while balancing and used his arms to balance. Officer Snuffer administered a preliminary breath test which did not indicate alcohol use by respondent.

Officer Snuffer arrested respondent and transported him to Raleigh General Hospital for a blood test at respondent's request. The West Virginia State Police laboratory analyzed respondent's blood sample which showed a response for cannabinoids, but the laboratory did not perform confirmatory analysis on this drug classification and did not confirm for every drug possibility within this drug class. Respondent was not asked to, and did not submit to, a secondary test of his breath.

On October 16, 2012, petitioner sent respondent an order of revocation for driving under the influence of a controlled substance or drug ("DUI"). Respondent, through counsel, submitted a hearing request to the Office of Administrative Hearings ("OAH") later that month, asserting that respondent was not driving under the influence.[1]

The OAH initially scheduled the matter for hearing on March 8, 2013, and respondent requested a continuance of that hearing. In total, respondent requested seven continuances over the course of several years which were all granted. Petitioner requested one continuance, and that motion was also granted. Accordingly, the OAH hearing was not held for more than five years after the appeal was filed.

During the pendency of the appeal before the OAH, petitioner filed a notice of appearance, a motion for evidentiary submission, and a copy of petitioner's file on five separate occasions. Based upon our review of the record, it does not appear that respondent ever objected to these submissions. Petitioner's file included petitioner's order of revocation, the DUI information sheet, the State of West Virginia Uniform Citation, and a page from respondent's driver's history. Following the first submission, on March 31, 2014, the OAH entered an order granting petitioner's motion for evidentiary submission, and respondent did not object to the OAH's order.

After the OAH rescheduled the matter the first time, it included Additional Instructions to the Parties[2] which provided that "[i]f a party intends to present testimony from any person (including any law-enforcement officer) it is the responsibility of that party to obtain the presence

---

[1] On the cover letter attached to the hearing request form, respondent requested "an administrative hearing on any revocation or proposed revocation of his driving privileges." Respondent's counsel noted, "[W]e hereby serve notice that we do intend to challenge the results of any secondary chemical analysis of his breath, blood or urine as well as to cross[-]examine the operator or operators thereof, inasmuch as the test was not performed correctly."

[2] It appears that the OAH issued/re-issued this document a total of seven times during the pendency of this matter.

of the person at the hearing." The OAH also attached a standing memorandum order which provided, in pertinent part:

> By publication of this Memorandum Order that a ruling may be made prehearing, or at the time of the hearing, that evidence may be admitted without the requirements that the declarant is present to testify or that the proposed evidence is otherwise admissible under the West Virginia Rules of Evidence, the Parties are provided fair warning prior to the hearing that a significant procedural change has recently been adopted by the OAH in view of the substantial implication of *Dale v. Doyle*, _____ W. Va. _____, No. 12-1509 (Slip Op. February 11, 2014). Consequently, this Memorandum Order is, in part, intended to prevent procedural ambush, by providing pretrial warning that the procedural landscape has significantly changed – in order to afford the Parties fair opportunity to take whatever steps or preparation they deem necessary and prudent to address evidentiary submissions that are the subject of this Memorandum Order. Without pretrial warning, a party may be unduly ambushed by the procedural change, or – at the time of the hearing, - the matter would have to be continued due to a party's lack of knowledge and preparation to meet the procedural change; either case being undesirable.

In a November 21, 2014, memorandum order, the OAH provided that "[c]ompliance with the following guidelines and procedures shall be required by a party desiring to admit blood draw and blood analysis affidavits before the Office of Administrative Hearings as evidence in an administrative hearing, unless waived by the opposing party opponent." Respondent did not object to the additional instructions or the order.

On April 4, 2018, respondent filed a motion to allow telephonic testimony of an expert witness and his disclosure of fact and expert witnesses. Petitioner filed a notice of intent to present expert testimony. Ultimately, on May 9, 2018, a hearing examiner for the OAH conducted an administrative hearing. At the hearing, petitioner asked for an emergency continuance because its subpoenaed witness, Officer Snuffer, did not appear. The OAH denied petitioner's motion for an emergency continuance but admitted the sworn statement of Officer Snuffer, a fact witness to the DUI offense, over the objection of respondent's counsel. Respondent and his expert witness, Lance Platt, testified at the hearing. The OAH entered a final order upholding the DMV's order of revocation on April 11, 2019.

Respondent filed an appeal of the OAH's order with the Circuit Court of Raleigh County. Reversing the decision of the OAH, the circuit court concluded that the "Rules of Evidence shall be applicable in all OAH hearings pursuant to W. Va. Code § 29A-5-2"; that the DMV "failed to produce any witnesses to authenticate the evidence contained in the DMV's file"; that the DMV "failed to produce any witness to provide the proper foundation for the admission of the blood test results"; and that the DMV "failed to produce any witness to testify as to any factual matters related to the revocation of [respondent's] driver's license." The circuit court's order provided that "had the Hearing Examiner applied the [West Virginia] Rules of Evidence, all of the evidence offered against him would have been excluded and therefore, there would have been no evidence to sustain the suspension of the license. The circuit court further noted that

3

[t]he WVSCA's and OAH's interpretation of West Virginia Code § 29A-5-2(b) is clearly wrong. First, although the Supreme Court correctly stated the law which defines the mandatory obligations associated with the use of the word shall before issuing its ruling, the Court mistakenly applied the use of shall to the admission of the evidence and not solely to the offering of the evidence. The use of shall as contained in West Virginia Code § 29A-5-2(b) applies to the Legislature's desire to avoid trial by ambush by requiring that an agency make available to an opposing party all information for review prior to its admission.

The circuit court's order provided that

[t]he current procedures allow for blatant misuse and abuse without leaving a party with an appropriate form of relief. Although it may be the exception rather than the rule, the current process allows a dishonest police officer to file paperwork containing misstatement of the facts or falsehoods, submit illegally or improperly obtained evidence such as blood alcohol sample and all the subsequent results, and any other conceivable form of false evidence to the DMV with the knowledge that if she or she does not appear at the administrative hearing, all of that evidence will be admitted because it cannot be challenged under the current rule and application of law.[3]

(Footnote added).

Petitioner filed this appeal challenging the circuit court's January 17, 2020, order. On appeal, petitioner raised two assignments of error. First, petitioner alleged that the circuit court erred when it found that this Court misinterpreted West Virginia Code § 29A-5-2(b) in its earlier decisions. Next, petitioner claimed that the circuit court erred when it found that the current administrative procedure left respondent without an appropriate form of relief. We will address these assignments below.

In *Frazier v. Fouch*, No. 19-0350 (W. Va. Nov. 6, 2020), we reiterated the standard of review to govern this matter.

"On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative

---

[3] The circuit court also noted that it had reviewed the Kanawha County Circuit Court's ruling in *Fouch v. Reed*, Civil Action No. 18-AA-223, and indicated that it found much of that "decision persuasive and in agreement with this Court's position that the prior interpretation of West Virginia Code § 29A-5-2(b) is clearly wrong and inapplicable based upon the revised administrative hearing process with the implementation of the OAH hearing process." Notably, however, we recently reversed and remanded the *Fouch* matter to the circuit court with directions. *Frazier v. Fouch*, No. 19-0350 (W. Va. Nov. 6, 2020).

officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

"In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

Syl. Pts. 1 and 2, *Fouch*. Guided by this standard, we review petitioner's arguments.

Petitioner initially argues that the circuit court erred when it found that this Court had misinterpreted West Virginia Code § 29A-5-2(b) in its earlier rulings. Respondent maintains that the circuit court properly found that this Court "incorrectly expanded the right of the hearing examiner to consider the admissibility of [petitioner's file] when it held that said evidence's admissibility was mandatory." Consistent with our ruling in *Fouch*, we agree with petitioner.

In syllabus point 3 of *Fouch*, we held:

"In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va. Code § 17C-5A-1(b) (2004) (Repl. Vol. 2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va. Code § 29A-5-2(b) (1964) (Repl. Vol. 2002)." Syl. Pt. 3, *Crouch v. W. Va. Div. of Motor Vehicles,* 219 W. Va. 70, 631 S.E.2d 628 (2006).

In *Fouch*, we found that the circuit court erred by ruling that the DMV's file, including the DUI information sheet, should not have been admitted into evidence and considered by the OAH. The *Fouch* Court also addressed earlier memorandum decisions from this Court wherein we discussed that the admission of the DMV file is mandatory before the OAH. Specifically, the *Fouch* decision referenced our 2018 decision where we noted

[w]e have previously stated that "[w]ithout a doubt, the Legislature enacted W. Va. Code § 29A-5-2(b) with the intent that it would operate to place into evidence in an administrative hearing ['a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself.[']" *Crouch*, 219 W.Va. [at] 76, 631 S.E.2d [at] 634. As evidenced by the use of the word "shall," admission of the evidence identified in the statute is mandatory. *Id.* The secondary chemical test result was in the DMV's possession, and the DMV sought to avail itself of the result. Accordingly, the result of the secondary chemical test should have been admitted into evidence, subject to a rebuttable presumption as to its accuracy. *Id.* at 76, n.12, 631 S.E.2d at 634, n.12 ("We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a

5

rebuttable presumption as to its accuracy.").

*Fouch*, slip op. at 11-12 (quoting *Reed v. Lemley*, No. 17-0797, 2018 WL 4944553, at *4 (W. Va. Oct. 12, 2018) (memorandum decision)).

Consistent with *Fouch* and the other decisions cited by this Court therein, testimony from Officer Snuffer was not required for the OAH to consider petitioner's records. Thus, the OAH appropriately accepted petitioner's file and the DUI information sheet into evidence in this matter without testimony from Officer Snuffer, and the circuit court's finding to the contrary was erroneous.

Petitioner also alleges that the circuit court erred in determining that the current administrative procedure left respondent without an appropriate form of relief and in implicitly finding that the absence of the investigating officer should be held against petitioner. In this matter, petitioner subpoenaed Officer Snuffer, but he did not appear at the hearing. When Officer Snuffer failed to appear, petitioner moved to continue the hearing, a request that was denied by the OAH. There is nothing in the record to suggest that respondent subpoenaed Officer Snuffer for the May 9, 2018, evidentiary hearing. As we noted in *Fouch*, "[t]he clear, unambiguous language of [West Virginia Code § 17C-5A-2(c)(3)] provides that 'the party' seeking to compel a witness to appear at an OAH hearing has the responsibility to request the subpoena, and the responsibility to petition the circuit court for enforcement of the subpoena when the witness fails to appear." *Fouch*, slip op. at 15. If respondent had wanted to procure Officer Snuffer's appearance at the May 9, 2018, evidentiary hearing, respondent should have subpoenaed him.

For the foregoing reasons, the circuit court's January 17, 2020, order is hereby reversed, and the case is remanded for entry of an order consistent with this decision.

Reversed and remanded.

**ISSUED:** January 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISQUALIFIED:**

Justice John A. Hutchison
Justice William R. Wooton

6